GEORGE B. CAMPBELL, KATHLEEN H. CAMPBELL, JULIAN C. WIN-
THROP, MARGARET D. WINTHROP, CLAUDE A. MANZI, JACQUELINE
R. MANZI, BETTY G. HINSON, JACKSON O. HINSON, JR., HAROLD R.
MOAG, JR., ANN BURTON MOAG, BETTY ADAMS SMITH, JOHN WES-
LEY SMITH, II, HENRY CLYDE WALTERS, ALBERTA M. WALTERS,
JETER L. WILLIAMSON, JR., ALMA C. WILLIAMSON, BOBBY THOMAS
WILSON, SHIRLEY TATE WILSON, SUING ON THEIR OWN BEHALF AND ON
BEHALF OF OTHERS SIMILARLY SITUATED v. THE CITY OF GREENSBORO

No. 8318SC882

(Filed 4 September 1984)

1. **Municipal Corporations § 2— annexation statutes—constitutionality**
   Statutes setting out the involuntary annexation procedure applicable to
   cities of 5,000 or more do not violate equal protection or Art. II, § 24 of the
   N.C. Constitution because certain counties are exempted therefrom.

2. **Municipal Corporations § 2.3— annexation—following natural topographic features**
   Although the boundary lines of areas being annexed did not follow natural
   topographic features for about a fourth of their total distance, the trial court
   properly concluded that the city complied with G.S. 160A-48(e) where the court
   found upon supporting evidence that in those instances where natural
   topographic features were not followed, practical reasons existed for not doing
   so.

3. **Municipal Corporations § 2.4; Rules of Civil Procedure § 26— discovery procedures—applicability to annexation proceeding**
   The discovery provisions of G.S. 1A-1, Rule 26(b)(1) applied to judicial pro-
   ceedings for the review of annexation ordinances with regard to whether the
   city followed the statutory procedure, whether the city's plan met statutory
   requirements, and whether the area to be annexed was eligible for annexation.
   The trial court in this proceeding did not err in entering a protective order
   preventing petitioners from deposing the City Manager and from examining
   most of the documents petitioners requested where such testimony and
   documents were not relevant to the issues the trial court had to decide.

APPEAL by petitioners from *Seay, Judge*. Judgment entered 23 March 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 10 May 1984.

This case concerns the attempted annexation of three different territories adjacent to the City of Greensboro. Each of the petitioners lives in one of the areas to be annexed. The annexation is being processed under the provisions of Part 3 of Article 4A of Chapter 160A of the General Statutes, which by its terms applies to annexations by cities of 5,000 or more population. In suing to enjoin the City from completing the annexation petitioners alleged, among other things, that because G.S. 160A-56 made Part 3 of Article 4A inapplicable to certain other counties having towns with 5,000 or more population, the annexation statute is unconstitutional, and that in establishing the boundaries of the areas to be annexed the City failed to follow various natural topographical lines, as the statute requires.

In undertaking to prepare their case, petitioners requested the City to produce certain documents relating to its compliance with the statutory annexation procedures and attempted to take the deposition of the City Manager. Respondent moved for a protective order, contending the annexation act does not authorize such discovery. After a hearing, Judge Helms ordered that the City Manager not be deposed and required the City to produce only some of the documents requested. Petitioners' immediate appeal from the order was dismissed by this Court as interlocutory and premature, and their request for discretionary review by the North Carolina Supreme Court was denied.

At the hearing in the Superior Court on the merits of the petition, petitioners presented evidence tending to show that: In setting the boundaries of the areas to be annexed, the City had failed to follow certain natural topographic lines, without good reason; the petitioners would be damaged in various respects if the annexation were approved; the Legislature exempted certain counties from the annexation plan for cities with a population of 5,000 or more just because their representatives so requested; and the annexation would affect certain township lines in different ways. The City's evidence tended to show that: It has complied with the applicable annexation statutes; it can furnish the annexed areas the same services other parts of the City receive;

and in establishing boundary lines of the areas to be annexed, it was not practical to follow topographic lines in many instances.

Following the hearing Judge Seay entered a judgment in which it was found and concluded that the statutes proceeded under are constitutional, the City has substantially complied with them in all material respects, and its annexation ordinance is valid.

*Foster, Conner & Robson, by Eric C. Rowe and C. Allen Foster, for petitioner appellants.*

*Dale Shepherd and Linda A. Miles, Deputy City Attorneys, for respondent appellee.*

PHILLIPS, Judge.

Four questions are presented by this appeal. Two are constitutional questions, which we will address first, since they have already been answered by our Supreme Court and this Court.

[1] The basis for both questions is that the statutory annexation plan petitioners are subjected to in this proceeding, Part 3 of Article 4A of Chapter 160A of the General Statutes, does not apply to certain other counties having towns of more than 5,000 population. Petitioners' first contention in this regard is that the statutory scheme imposed on them as residents of Guilford County, but not on residents of certain other counties similarly situated, denies them equal protection of the law under both the federal and state constitutions. This contention is overruled under authority of *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 269 S.E. 2d 142 (1980) and *Abbott v. Town of Highlands*, 52 N.C. App. 69, 277 S.E. 2d 820 (1981). Petitioners' second contention is that since the statute involved applies only to some counties, but not others, it violates Article II, Section 24 of the North Carolina Constitution, which prohibits the General Assembly from enacting "any local, private, or special act or resolution" in regard to certain enumerated subjects. But it has long been settled that this constitutional provision does not apply to annexation proceedings by municipalities. The reason for this, as is made plain by *In re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961) and *In the Matter of City of Durham Annexation Ordinance*, 69 N.C. App. 77, 316 S.E. 2d 649 (1984), is that another constitutional pro-

vision, Article VII, Section 1 (formerly Article VIII, Section 4) authorizes the General Assembly "except as otherwise prohibited by this Constitution" to "give such powers and duties to counties, cities, and towns and other governmental subdivisions as it may deem advisable," and no other provision of our Constitution prohibits the General Assembly from enacting special legislation for the annexation of areas by municipalities. *See also Lutterloh v. Fayetteville*, 149 N.C. 65, 62 S.E. 758 (1908); *Manly v. Raleigh*, 57 N.C. 370 (1859).

[2]  The next question presented is whether the trial court erred in finding and concluding that in setting the boundaries of the areas to be annexed, the City substantially complied with the statute pertaining thereto. The text of G.S. 160A-48(e) relevant to this assignment of error reads as follows:

> In fixing new municipal boundaries, a municipal governing board shall, wherever *practical*, use natural topographic features such as ridge lines and streams and creeks as boundaries, and if a street is used as a boundary, include within the municipality land on both sides of the street and such outside boundary may not extend more than 200 feet beyond the right-of-way of the street. (Emphasis supplied.)

That the boundary lines of the areas being annexed do not follow natural topographic features for about a fourth of their total distance is not disputed. The court found and the evidence shows that the boundaries follow natural topographic features for a distance of 90,800 feet altogether, but do not follow such features a total distance of 31,900 feet. The court also found as a fact, however, that the City followed natural topographic features when it was practical to do so and that in those instances where natural topographic features were not followed practical reasons existed for not doing so. This finding is clearly sufficient to support the court's conclusion that the new boundary lines were laid out in compliance with the applicable statute; and if the finding is supported by competent evidence, it concludes the matter, since questions of fact in proceedings of this kind are the province of the trial court. *Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E. 2d 189 (1980). The finding is supported by much competent evidence. The testimony of respondent's chief witness, its Assistant Public Works Director, was largely devoted to explain-

ing why it was not practical to follow natural topographic features at the different points involved. The testimony indicates that the witness had been the City's Chief Engineer for 25 years, was familiar with each area to be annexed, understood the engineering and other problems each involved, and was well qualified to testify as to the practicality or impracticality of following natural topographic features at different places in laying out the new boundary lines. This issue of fact having been resolved against petitioners upon competent evidence, this assignment of error is also overruled.

[3] The final question presented is whether the order preventing petitioners from deposing the City Manager and examining most of the documents petitioners requested respondent to produce was properly entered. Petitioners contend that though their attempted discovery covered a very wide scope indeed, they were entitled to pursue it under the provisions of Rule 26(b)(1) of the N.C. Rules of Civil Procedure, which authorizes parties in civil proceedings to "obtain discovery regarding any matter not privileged which is relevant to the subject matter involved in the pending action." Respondent, on the other hand, contends petitioners were entitled to no discovery at all, since this is but a judicial review of some city ordinances, rather than an ordinary lawsuit; and respondent's motion for a protective order was not based on the "good cause" provisions of Rule 26(c), but on the court's inherent power to keep litigation being processed in proper channels. In ruling on respondent's motion, however, and entering the protective order which permitted petitioners to do some of discovery, but prevented them from doing the rest, the trial judge expressly relied upon Rule 26(c). In doing so, the judge was apparently of the opinion that though discovery in annexation proceedings is not altogether forbidden, its scope is necessarily limited by the nature of the proceeding. We agree.

Though, so far as our research discloses, neither our Supreme Court nor this Court has determined whether the rules of civil procedure even apply to the judicial review of annexation ordinances, we believe that the answer is quite clear. G.S. 1A-1, Rule 1 provides that the rules "shall govern the procedure in the superior and district courts of the State of North Carolina in all actions and proceedings of a civil nature except when a differing procedure is prescribed by statute." Since this is manifestly a

"proceeding of a civil nature," the rules clearly apply to it, we believe, unless a different procedure is provided by statute, but only to the extent necessary to process the proceeding according to its nature. A different procedure for this proceeding from that provided in the rules of civil procedure is provided to some extent by G.S. 160A-50. Subsection (c) requires the City to transmit to the reviewing court a transcript of the journal or minute book in which the procedure for annexation has been set forth and a copy of the report containing the plan for extending services to the annexed area as required by G.S. 160A-47. Subsection (f) permits the reviewing court to hear evidence, but only with regard to the statutory procedure not being followed, the City's plan not meeting the requisites set forth in G.S. 160A-47, and the area to be annexed not having the proper characteristics for annexation as set forth in G.S. 160A-48. And subsection (g) limits the reviewing court's consideration to whether the procedures and plans required by law have been followed and adopted and whether the area involved is one that the law approves for annexation.

Thus, this proceeding is a limited judicial review, with few similarities to ordinary civil actions which are initiated, tried and adjudicated in a different manner and for which the rules of civil procedure were mostly devised. Nevertheless, since the court reviewing annexation proceedings is explicitly authorized to receive evidence as to the City's compliance with the various procedures prescribed, as to its annexation plan meeting the requisites of G.S. 160A-47, and as to the area involved being eligible for annexation under G.S. 160A-48, it seems plain to us that in those instances where discovery may illuminate these issues that it is authorized under the rules of civil procedure. In the absence of an explicit statutory restriction to the contrary, it necessarily follows, it seems to us, that a judge having the duty to receive evidence on and decide certain issues has the power, within his discretion, to require that evidence on those issues be produced. In the exercise of that power other factors require consideration, however, including the information already available through the documents required by G.S. 160A-50(c) and the mandate contained in G.S. 160A-50 that these reviews be accomplished expeditiously and without unnecessary delays.

The record indicates that Judge Helms exercised sound judicial discretion in ruling on respondent's motion for a protec-

tive order. The documents that he required the City to produce were clearly relevant to the issues he was obliged to decide. Many of the documents that he refused to permit petitioners to examine—including documents relating to projected revenues from the annexed area, to the impact of annexation on future city budgets, to the reasons or purposes underlying the proposed annexation, and to the inclusion or exclusion of particular tracts in the annexation—were clearly irrelevant in that they related to the wisdom or politics of the plan, rather than its compliance with the law. And though some of the other documents petitioners sought appear to be more or less relevant to the issues before the court, we cannot say that refusing their discovery was an abuse of discretion or that petitioners were prejudiced thereby. And nothing in the record suggests that the City Manager's testimony would have shed any light on the technical issues that the court had to decide. This assignment of error is also overruled, and the judgment appealed from is affirmed.

Affirmed.

Judges HEDRICK and ARNOLD concur.